UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **INDICTMENT** *CR 11-256 ADM/JJK* |
| | ) |
| Plaintiff, | ) (18 U.S.C. § 371) |
| | ) (26 U.S.C. § 7206(1)) |
| v. | ) (26 U.S.C. § 7206(2)) |
| | ) |
| (1) JEFFREY JOHN WIRTH, | ) |
| | ) |
| (2) HOLLY CLAIRE DAMIANI, f/k/a | ) |
| Holly Claire Wirth, and | ) |
| | ) |
| (3) MICHAEL JAMES MURRY, | ) |
| | ) |
| Defendants. | ) |

THE UNITED STATES GRAND JURY CHARGES THAT:

### BACKGROUND

At all times relevant to this Indictment:

1.    Jeffrey John WIRTH was a resident of Minnesota.  WIRTH was the sole owner, president, and chief executive officer of The Wirth Companies ("TWC"), a Subchapter S corporation.  TWC was a real estate development and management company operating in the State of Minnesota and elsewhere.

2.    In addition to being the sole owner of TWC, WIRTH owned directly or indirectly 90 percent or more of nearly thirty other businesses (hereinafter collectively referred to as the "Related Businesses").

3.    Through TWC and the Related Businesses, WIRTH developed, owned, or managed office buildings, mobile communications towers, apartment buildings, a shopping center, and luxury hotels, including the Grand Hotel Minneapolis in downtown Minneapolis,

SCANNED
AUG 1 7 2011
U.S. DISTRICT COURT MPLS

FILED   AUG 1 7 2011
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED

U.S. v. Jeffrey John Wirth, et al.

Minnesota (the "Grand Hotel"), the Grand Rios Hotel & Waterpark in Brooklyn Park, Minnesota (the "Grand Rios"), and the Grand Lodge Hotel & Waterpark of America in Bloomington, Minnesota (the "Grand Lodge").

4.    Holly Claire DAMIANI was a resident of Minnesota.   From 1980 until 2008 she and WIRTH were married.   From about 1988 until her separation from WIRTH in 2006, she was also a Vice President of TWC, and from at least 2003 to 2006 she was TWC's Chief Financial Officer.   When she was married to WIRTH, DAMIANI was known as Holly Claire Wirth.

5.    Michael James MURRY was a resident of Minnesota.   From at least 2000 and continuing until at least September 2010, MURRY was the primary tax return preparer for WIRTH and his businesses.   From at least 2000 until DAMIANI's separation from WIRTH in about 2006, MURRY was also the primary tax return preparer for DAMIANI.   MURRY served as tax return preparer through his business, Michael J. Murry, Ltd., which in about 2005 was renamed Murry & Murry, Ltd. (collectively "Murry & Murry").

## COUNT 1
(Conspiracy to Defraud the United States)

6.    The Grand Jury realleges and restates Paragraphs 1 through 5 above as if fully set forth herein.

U.S. v. Jeffrey John Wirth, et al.

7.    Beginning at least in or before January 2003 and continuing through at least February 2010, in the State and District of Minnesota and elsewhere, the defendants,

**JEFFREY JOHN WIRTH,**
**HOLLY CLAIRE DAMIANI,**
f/k/a Holly Claire Wirth, **and**
**MICHAEL JAMES MURRY,**

did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service of the United States Department of the Treasury in the ascertainment, computation, assessment, and collection of revenue, particularly by impairing and obstructing the collection of taxes.

### Purpose of the Conspiracy

8.    The purpose of the conspiracy was to evade unlawfully TWC's, WIRTH's, and DAMIANI's tax obligations.

### Manners and Means of the Conspiracy

9.    **Development of Lake Minnetonka Island Mansion with Company Funds.** As part of the conspiracy and scheme to defraud, WIRTH, DAMIANI, MURRY, and others arranged for several million dollars of acquisition, design, and construction expenses for WIRTH's and DAMIANI's custom mansion, located on an island in Lake

3

U.S. v. Jeffrey John Wirth, et al.

Minnetonka, to be paid by TWC and the Related Businesses, but not reported on the businesses' income tax returns as distributions of capital, or on WIRTH's and DAMIANI's income tax returns as income. As a result, the defendants and other co-conspirators caused the amount of adjusted gross income, taxable income, and total tax shown on WIRTH's and DAMIANI's income tax returns to be falsely understated.

10. **Payment of Additional Personal Expenses with Company Funds**. As part of the conspiracy and scheme to defraud, WIRTH, DAMIANI, MURRY, and others arranged for hundreds of thousands of dollars of WIRTH's and DAMIANI's personal expenses, in addition to their Lake Minnetonka mansion expenses described above, to be paid by TWC and the Related Businesses, but not reported on the businesses' income tax returns as distributions of capital, or on WIRTH's and DAMIANI's income tax returns as income. WIRTH, DAMIANI, and others also caused at least $100,000 in personal expenses, including expenses for travel, dry cleaning, personal fitness training, and their children, to be paid by TWC and falsely recorded on TWC's books and tax returns as business expenses. As a result, the defendants and other co-conspirators caused the amount of adjusted gross income, taxable income, and total tax shown on WIRTH's and DAMIANI's income tax returns to be falsely understated.

4

U.S. v. Jeffrey John Wirth, et al.

11.   **Understatement of Wages.**  As part of the conspiracy and scheme to defraud, the defendants and other co-conspirators caused the "W-2" reportable wages of WIRTH and DAMIANI to be falsely understated.   From 2002 through 2006, while they actively managed the business and received substantial distributions from TWC, WIRTH and DAMIANI each claimed wages of $12,000 per year or less, whereas the fair market value of their labor was significantly higher than $12,000 per year.   As a result of the understatement of wages reported on their Forms W-2, on the TWC income tax returns, and on the income tax returns for WIRTH and DAMIANI, the amounts of employment taxes paid by TWC, WIRTH, and DAMIANI were far less than should have been paid.

12.   **Unreported Construction and Development Fee Income.**  As part of the conspiracy and scheme to defraud, WIRTH and others caused to go unreported on TWC's tax returns millions of dollars in fee income earned by TWC during the construction and development of the Grand Rios and the Grand Lodge.   As a result, WIRTH and other co-conspirators caused the amount of adjusted gross income, taxable income, and total tax shown on WIRTH's and DAMIANI's income tax returns to be falsely understated.

13.   **"Zeroing Out" of Business Income By Recording False Management Fees.**  As part of the conspiracy and scheme to defraud, WIRTH, DAMIANI, MURRY, and other co-conspirators caused the income

5

U.S. v. Jeffrey John Wirth, et al.

of TWC and the Related Businesses to be reduced to nearly zero, by using losses from certain WIRTH businesses to offset income from other WIRTH businesses.  The defendants eliminated the majority of the businesses' income by creating false management fee entries that they recorded on the tax returns.  As a result, the defendants fraudulently eliminated income that otherwise should have been taxable to WIRTH and DAMIANI on their individual income tax returns.

14.  **Improper  Treatment  of  TWC's  Payment  of  Employees' Personal Automobile Expenses.**  As part of the conspiracy and scheme to defraud, WIRTH, DAMIANI, and others caused TWC to make the personal car payments of certain TWC employees, and caused the amounts of the payments not to be reported as compensation to the employees, which had the purpose and effect both of falsely underreporting  the  employees'  taxable  wages,  and  falsely understating TWC's and the employees' employment tax obligations.

### Overt Acts

15.  In furtherance of the conspiracy, and for the purpose of bringing about its unlawful objective, the defendants and other co-conspirators committed and caused to be committed the following overt acts in the District of Minnesota and elsewhere.

16.  For the tax years 2003 through 2006, WIRTH, DAMIANI, MURRY,  and  other  co-conspirators  caused  TWC  to  pay  personal

expenses of WIRTH and DAMIANI, which were not recorded as distributions of capital or reported on WIRTH's and DAMIANI's income tax returns, including the following:

    a.   In 2003, WIRTH and DAMIANI purchased the property for their Lake Minnetonka mansion for over $2.2 million, using company funds.

    b.   On or about June 18, 2003, WIRTH signed a check drawn on a TWC account at Private Bank Minnesota payable to Erotas Building Corp. in the amount of $24,647.69, for the building permit for the Lake Minnetonka mansion.

    c.   On or about June 7, 2004, DAMIANI signed a check drawn on a TWC account at Private Bank Minnesota payable to MacDonald & Company in the amount of $57,017.50, for a portion of the architectural fees for the Lake Minnetonka mansion.

    d.   On or about August 12, 2005, WIRTH signed a check drawn on a TWC account at Private Bank Minnesota payable to Erotas Building Corporation in the amount of $175,049.36, for a portion of the construction of the Lake Minnetonka mansion.

    e.   On or about August 29, 2005, WIRTH signed a check drawn on a TWC account at Private Bank Minnesota payable to Manhattan Apartments Inc. in the amount of $3,880.00, for an apartment for one of WIRTH's and DAMIANI's children.

U.S. v. Jeffrey John Wirth, et al.

f.    On or about September 26, 2006, DAMIANI signed a check drawn on a TWC account at Private Bank Minnesota payable to Ramsey Engler Ltd. in the amount of $27,574.50, for a portion of the design fees for the Lake Minnetonka mansion.

17.  For the tax years 2003 through 2006, WIRTH, DAMIANI, and other co-conspirators caused TWC to pay personal expenses of WIRTH and DAMIANI and falsely report the payments on TWC's books, records, and tax returns as if they were legitimate business expenses, including the following:

a.    In December 2002 and January 2003, WIRTH and DAMIANI incurred about $6,000 in airline, hotel, food, and other expenses for a trip to Hawaii for themselves and their children, which they paid for in early 2003 with funds drawn on a TWC account at Private Bank Minnesota, recorded as business travel on TWC's books, and treated as business travel expense on TWC's 2003 tax return.

b.    On or about October 23, 2003, DAMIANI signed a check drawn on a TWC account at Private Bank Minnesota payable to Wayzata Home Laundry, Inc. in the amount of $538.53, which included expenses for WIRTH's and DAMIANI's personal dry cleaning, which the defendants caused to be recorded as a "Miscellaneous Building" expense on TWC's books and treated as

a "Repairs and Maintenance" business expense on TWC's 2003 tax return.

c.   On or about March 11, 2004, DAMIANI signed a check drawn on a TWC account at Private Bank Minnesota payable to Dartmouth College in the amount of $13,870.00 which represented education expenses for one of WIRTH's and DAMIANI's children, which the defendants caused to be recorded as a "Seminars and Education" expense on TWC's books and treated as a "Training and Seminars" business expense on TWC's 2004 tax return.

d.   On or about September 22, 2004, WIRTH and DAMIANI purchased on a credit card five round-trip airline tickets totaling $6,540.35 for a trip to Tokyo, Japan for themselves and their children, which they recorded as business travel on TWC's books, treated as business travel expense on TWC's 2004 tax return, and paid for with funds drawn on a TWC account at Private Bank Minnesota.

e.   On or about June 6, 2005, DAMIANI signed a check drawn on a TWC account at Private Bank Minnesota payable to Minneapolis Lifetime Athletic Club in the amount of $1,162.83, which included $200 in personal physical fitness training charges for one of WIRTH's and DAMIANI's children, was recorded as a "Dues and Subscriptions" expense on TWC's books,

9

and treated as a "Dues and Subscriptions" business expense on TWC's 2005 tax return.

f.   On or about December 22, 2005, DAMIANI signed a check drawn on a TWC account at Private Bank Minnesota payable to The Blake School in the amount of $6,674.72, which represented education expenses for one of WIRTH's and DAMIANI's children, which the defendants caused to be recorded as a "Seminars and Education" expense on TWC's books, and treated as a "Training and Seminars" business expense on TWC's 2005 tax return.

g.   In late June 2006, WIRTH and DAMIANI purchased on a credit card five round-trip airline tickets totaling $3,431.65 for a trip to British Columbia, Canada for themselves and their children, which they recorded as business travel on TWC's books, treated as business travel expense on TWC's 2006 tax return, and paid for with funds drawn on a TWC account at Private Bank Minnesota.

18.   For the tax years 2003 through 2006, WIRTH, DAMIANI, MURRY, and others caused TWC to pay "W-2" reportable wages to WIRTH, as President and CEO, and DAMIANI, as Vice President and CFO, as follows:

U.S. v. Jeffrey John Wirth, et al.

| TAX YEAR | WIRTH | DAMIANI |
|----------|-------|---------|
| 2003 | $12,000 | $12,000 |
| 2004 | $12,000 | $12,000 |
| 2005 | $12,000 | $12,000 |
| 2006 | $12,000 | $10,000 |

19.   For the tax years 2003 through 2006, WIRTH and other co-conspirators caused over $10 million in construction, development, and other services income earned by TWC for the development of the Grand Rios and Grand Lodge to go unreported on TWC's books, records and tax returns.

20.   From at least on or before August 25, 2004 through at least on or about October 13, 2006, MURRY caused to be prepared false and fraudulent income tax returns on behalf of TWC, WIRTH, DAMIANI, and many of the Related Businesses, which MURRY signed as the preparer and which were filed with the Internal Revenue Service, including the following:

a.   For the tax years 2003 through 2005, Form 1120S income tax returns for TWC that falsely understated ordinary business income and property distributions, as further described in Counts 3 and 7 of this Indictment.

b.   For the tax years 2003 through 2005, Form 1040 individual income tax returns for WIRTH and DAMIANI that falsely understated their adjusted gross income, taxable

U.S. v. Jeffrey John Wirth, et al.

income, and total tax, as further described in Counts 5 and 9 of this Indictment.

21. From at least on or before August 26, 2004 through at least on or about October 16, 2006, the defendants signed false and fraudulent income tax returns for TWC, many of the Related Businesses, and themselves, which were filed with the Internal Revenue Service, including the following:

a. For the tax years 2003 through 2005, WIRTH signed Form 1120S income tax returns for TWC that falsely understated ordinary business income and property distributions, as further described in Counts 2 and 6 of this Indictment.

b. For the tax years 2003 through 2005, WIRTH and DAMIANI signed Form 1040 individual income tax returns that falsely understated their adjusted gross income, taxable income, and total tax, as further described in Counts 4 and 8 of this Indictment.

22. From at least on or before September 7, 2004, through at least on or about October 18, 2006, the defendants caused to be mailed false and fraudulent income tax returns for TWC, WIRTH, DAMIANI, and many of the Related Businesses, including the following:

a. For the tax years 2003 through 2005, Form 1120S income tax returns for TWC that falsely understated ordinary

U.S. v. Jeffrey John Wirth, et al.

business income and property distributions, as further described in Counts 2, 3, 6, and 7 of this Indictment.

b. For the tax years 2003 through 2005, Form 1040 individual income tax returns for WIRTH and DAMIANI that falsely understated their adjusted gross income, taxable income, and total tax, as further described in Counts 4, 5, 8, and 9 of this Indictment.

23. In 2009 and 2010, after the defendants knew that an IRS investigation was underway, WIRTH caused to be prepared and filed amended corporate and individual tax returns, for tax years 2005 and 2006, that reversed the "zeroed out" false management fee entries, but left other false items unchanged, including the diversion of company funds to construct WIRTH's and DAMIANI's mansion, the treatment of amounts paid for personal expenses as business expenses, the understated wages of WIRTH and DAMIANI, and the unreported construction and development fee income earned by TWC for the Grand Rios and Grand Lodge.

24. All in violation of Title 18, United States Code, Section 371.

## COUNT 2
(False Corporate Tax Return - 2004)

25. The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

13

<u>U.S. v. Jeffrey John Wirth, et al.</u>

26.   On or about September 19, 2005, in the State and District of Minnesota, the defendant,

**JEFFREY JOHN WIRTH,**

did willfully make and file with the Internal Revenue Service a false U.S. Corporation Income Tax Return, Form 1120S, on behalf of The Wirth Companies, for the calendar year 2004, which he signed and subscribed on or about September 14, 2005, and which was verified by a written declaration that it was made under the penalties of perjury, and which return he did not believe to be true and correct as to every material matter in that Line 1c reported the gross receipts or sales for The Wirth Companies to be $5,032,446, and Schedule K, Line 16d, reported the property distributions to be $0, whereas, as he then and there well knew and believed, the gross receipts or sales for The Wirth Companies was substantially more than $5,032,446 and the property distributions was substantially more than $0, all in violation of Title 26, United States Code, Section 7206(1).

**COUNT 3**
(Procuring a False Corporate Tax Return - 2004)

27.   The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

U.S. v. Jeffrey John Wirth, et al.

28.   On or about September 19, 2005, in the State and District of Minnesota, the defendant,

**MICHAEL JAMES MURRY,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of a U.S. Corporation Income Tax Return, Form 1120S, on behalf of The Wirth Companies, for the calendar year 2004, which return was false and fraudulent as to a material matter in that Line 21 reported the ordinary business income for The Wirth Companies to be -$1,762,413, and Schedule K, Line 16d, reported the property distributions to be $0, whereas, as he then and there well knew and believed, the ordinary business income for The Wirth Companies was substantially more than -$1,762,413, and the property distributions was substantially more than $0, all in violation of Title 26, United States Code, Section 7206(2).

### COUNT 4
(False Individual Tax Return - 2004)

29.   The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

30.   On or about September 19, 2005, in the State and District of Minnesota, the defendants,

**JEFFREY JOHN WIRTH and
HOLLY CLAIRE DAMIANI,**
f/k/a Holly Claire Wirth,

15

U.S. v. Jeffrey John Wirth, et al.

did willfully make and file with the Internal Revenue Service a false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2004, which they both signed and subscribed on or about September 6, 2005, and which was verified by a written declaration that it was made under the penalties of perjury, and which return they did not believe to be true and correct as to every material matter in that Line 7 reported their wages to be $24,000, Line 13 reported their capital gain to be $1,713,109, Line 17 reported their income from partnerships and S corporations to be -$1,762,214, Line 36 reported their adjusted gross income to be $89,057, Line 42 reported their taxable income to be $37,740, and Line 62 reported their total tax to be $887, whereas, as the defendants then and there well knew and believed, their wages were substantially more than $24,000, their capital gain was substantially more than $1,713,109, their income from partnerships and S corporations was substantially more than -$1,762,214, their adjusted gross income was substantially more than $89,057, their taxable income was substantially more than $37,740, and their total tax was substantially more than $887, all in violation of Title 26, United States Code, Section 7206(1).

U.S. v. Jeffrey John Wirth, et al.

### COUNT 5
(Procuring a False Individual Tax Return - 2004)

31. The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

32. On or about September 19, 2005, in the State and District of Minnesota, the defendant,

**MICHAEL JAMES MURRY,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of a U.S. Individual Income Tax Return, Form 1040, on behalf of Jeffrey John WIRTH and Holly Claire DAMIANI, then known as Holly Claire Wirth, for the calendar year 2004, which return was false and fraudulent as to a material matter in that Line 7 reported their wages to be $24,000, Line 13 reported their capital gain to be $1,713,109, Line 17 reported their income from partnerships and S corporations to be -$1,762,214, Line 36 reported their adjusted gross income to be $89,057, Line 42 reported their taxable income to be $37,740, and Line 62 reported their total tax to be $887, whereas, as the defendant then and there well knew and believed, their wages were substantially more than $24,000, their capital gain was substantially more than $1,713,109, their income from partnerships and S corporations was substantially more than -$1,762,214, their adjusted gross income was substantially more

17

U.S. v. Jeffrey John Wirth, et al.

than $89,057, their taxable income was substantially more than $37,740, and their total tax was substantially more than $887, all in violation of Title 26, United States Code, Section 7206(2).

### COUNT 6
(False Corporate Tax Return - 2005)

33.    The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

34.    On or about September 15, 2006, in the State and District of Minnesota, the defendant,

**JEFFREY JOHN WIRTH,**

did willfully make and file with the Internal Revenue Service a false U.S. Corporation Income Tax Return, Form 1120S, on behalf of The Wirth Companies, for the calendar year 2005, which he signed and subscribed on or before September 15, 2006, and which was verified by a written declaration that it was made under the penalties of perjury, and which return he did not believe to be true and correct as to every material matter in that Line 1c reported the gross receipts or sales for The Wirth Companies to be $43,030,148, and Schedule K, Line 16d, reported the property distributions to be $0, whereas, as he then and there well knew and believed, the gross receipts or sales for The Wirth Companies was substantially more than $43,030,148 and the property distributions

U.S. v. Jeffrey John Wirth, et al.

was substantially more than $0, all in violation of Title 26, United States Code, Section 7206(1).

### COUNT 7
(Procuring a False Corporate Tax Return - 2005)

35. The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

36. On or about September 15, 2006, in the State and District of Minnesota, the defendant,

**MICHAEL JAMES MURRY,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of a U.S. Corporation Income Tax Return, Form 1120S, on behalf of The Wirth Companies, for the calendar year 2005, which return was false and fraudulent as to a material matter in that Line 21 reported the ordinary business income for The Wirth Companies to be -$54,556, and Schedule K, Line 16d, reported the property distributions to be $0, whereas, as he then and there well knew and believed, the ordinary business income for The Wirth Companies was substantially more than -$54,556, and the property distributions were substantially more than $0, all in violation of Title 26, United States Code, Section 7206(2).

U.S. v. Jeffrey John Wirth, et al.

## COUNT 8
(False Individual Tax Return - 2005)

37.   The Grand Jury realleges and restates Paragraphs 1 through 5 and 8 through 23 above as if fully set forth herein.

38.   On or about October 18, 2006, in the State and District of Minnesota, the defendants,

**JEFFREY JOHN WIRTH and
HOLLY CLAIRE DAMIANI,**
f/k/a Holly Claire Wirth,

did willfully make and file with the Internal Revenue Service a false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2005, which they both signed and subscribed on or about October 16, 2006, and which was verified by a written declaration that it was made under the penalties of perjury, and which return they did not believe to be true and correct as to every material matter in that Line 7 reported their wages to be $24,000, Line 13 reported their capital gain to be $0, Line 17 reported their income from partnerships and S corporations to be -$57,344, Line 37 reported their adjusted gross income to be $87,033, Line 43 reported their taxable income to be $37,130, and Line 63 reported their total tax to be $4,194, whereas, as the defendants then and there well knew and believed, their wages were substantially more than $24,000, their capital gain was substantially more than $0, their income from partnerships and S

20

corporations was substantially more than -$57,344, their adjusted gross income was substantially more than $87,033, their taxable income was substantially more than $37,130, and their total tax was substantially more than $4,194, all in violation of Title 26, United States Code, Section 7206(1).

### COUNT 9
(Procuring a False Individual Tax Return - 2005)

39.   The  Grand  Jury  realleges  and  restates  Paragraphs  1 through 5 and 8 through 23 above as if fully set forth herein.

40.   On or about October 18, 2006, in the State and District of Minnesota, the defendant,

### MICHAEL JAMES MURRY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of a  U.S.  Individual  Income  Tax  Return,  Form  1040,  on  behalf  of Jeffrey John WIRTH and Holly Claire DAMIANI, then known as Holly Claire Wirth, for the calendar year 2005, which return was false and fraudulent as to a material matter in that Line 7 reported their wages to be $24,000, Line 13 reported their capital gain to be $0, Line 17 reported their income from partnerships and S corporations to be -$57,344, Line 37 reported their adjusted gross income to be $87,033, Line 43 reported their taxable income to be $37,130, and Line 63 reported their total tax to be $4,194,

21

U.S. v. Jeffrey John Wirth, et al.

whereas, as the defendant then and there well knew and believed, their wages were substantially more than $24,000, their capital gain was substantially more than $0, their income from partnerships and S corporations was substantially more than -$57,344, their adjusted gross income was substantially more than $87,033, their taxable income was substantially more than $37,130, and their total tax was substantially more than $4,194, all in violation of Title 26, United States Code, Section 7206(2).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY               FOREPERSON